UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

DWAYNE IVERSON,

               **Plaintiff,**

               **- against -**

**VERIZON COMMUNICATIONS,**

               **Defendant.**

------------------------------------------------- X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 10/13/09

**OPINION AND ORDER**

**08 Civ. 8873 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Dwayne Iverson, proceeding pro se, brings this action against his former employer, Verizon Select Services, Inc. ("Verizon").[1] Iverson alleges that Verizon violated federal and state anti-discrimination laws when it terminated his employment after discovering that Iverson had diabetes. Verizon now moves for summary judgment with respect to all claims against it. For the reasons stated below, Verizon's motion is granted.

---

    [1]    Iverson erroneously sued Verizon Communications instead of Verizon Select Services, Inc. Nonetheless, Verizon has appeared and defended this action.

1

## II.    BACKGROUND[2]

### A.    Facts

#### 1.    Iverson's Early Employment at Verizon

Iverson began employment with Verizon as a technician on June 22, 1998.[3]  Verizon is engaged in the business of providing communication services and support to commercial clients.[4]  As a Technician, Iverson was responsible for supporting commercial telecommunication lines and equipment at the locations of Verizon customers.[5]

Following Iverson's unsatisfactory interaction with a customer in 2003, Verizon gave Iverson at least one written warning.[6]  This warning informed Iverson of the possibility that if he failed to adhere to Verizon company policy, he

---

[2]       Unless otherwise noted, the facts are drawn from Verizon's Rule 56.1 Statement ("Verizon 56.1"), to which Iverson did not respond.  Nonetheless, the Court considered the evidence submitted by Iverson in determining which facts were uncontested.

[3]       *See* 7/10/09 Letter from Iverson to Court, Motion for Trial ("7/10/09 Letter") at 1; Verizon 56.1 ¶ 2.

[4]       *See* Verizon 56.1 ¶ 1.

[5]       *See id.* ¶ 3.

[6]       *See* 7/10/09 Letter at 1; Verizon 56.1 ¶ 6; 12/16/03 Written Warning from Joseph Addamo, Verizon Branch Manager, to Dwayne Iverson ("12/16/03 Warning"), Ex. C to Declaration of Martin W. Aron, Verizon's Counsel ("Aron Decl.").

could be subject to "further disciplinary action, up to and including termination."[7]

Verizon also documented concerns about Iverson in his 2003 Year-End

Performance Assessment, noting specifically "several complaints by customers to

remove [Iverson] from their site."[8]  In this Performance Assessment, Iverson was

given an overall rating of "Improvement Needed."[9]  The assessment also noted that

"[m]ore attention needs to be given to completing tickets in a timely fashion," that

"[Iverson] must learn to maintain a professional appearance in front of the

customer at all times," that "there needs to be more team work when working with

[Iverson's] fellow employees," and that "[t]here have been several complaints by

customers to remove [Iverson] from their site."[10]

On July 14, 2004, Iverson was injured in a car accident while

traveling in a Verizon vehicle.[11]  As a result of this injury, Iverson did not work

and was placed on workers' compensation until his return to work on January 3,

---

[7]     12/16/03 Warning; *see also* Deposition of Dwayne Iverson ("Iverson Dep."), Ex. A to Aron Decl., at 103-105.

[8]     2003 Year-End Performance Assessment ("2003 Performance Assessment"), Ex. D to Aron. Decl.

[9]     *Id.*

[10]    *Id.*

[11]    *See* 7/10/09 Letter at 2.

2005.[12]

## 2.    Iverson's 2005 Performance

In April 2005, Iverson's supervisor, Deron Taylor, placed Iverson on a Performance Improvement Plan ("PIP") due to alleged customer dissatisfaction and poor performance.[13]  The PIP documentation noted several Verizon customers that no longer wanted Iverson to service their accounts.[14]  The PIP documentation notified Iverson that he was expected to maintain acceptable performance for twelve months following completion of the PIP, lest he "be subject to further corrective action up to and including dismissal."[15]  Iverson completed the PIP in September 2005.[16]

On November 14, 2005, Verizon received a request from one of its

---

[12]     *See id.*

[13]     *See id.* at 1; Verizon 56.1 ¶ 12.

[14]     *See* Performance Improvement Plan with Dwayne Iverson's Comments ("Iverson PIP"), Ex. to 7/10/09 Letter; *see also* Performance Improvement Plan Without Comments, Ex. A to Declaration of Deron Taylor ("Taylor Decl.").

[15]     Iverson PIP.

[16]     *See* 2005 Performance Development Review, Ex. to 7/10/09 Letter. This document noted that while he had met most of his goals, Iverson still had some performance issues.  Specifically, these issues related to the proper response to assignment tickets and better management of sick days.

4

clients, ABN AMRO, that Iverson be replaced by another technician.[17]  ABN

AMRO cited "repeated performance issues" as the reason for its request.[18]  Soon

after, on December 14, 2005, Verizon received a complaint about Iverson from

another client, Affiliated Computer Services, Inc. ("ACS").  ACS complained that

Iverson had been disgruntled about his workload and had been spreading rumors

about another employee at a work site.[19]

Iverson's 2005 Performance Assessment noted that two clients, ABN

AMRO and Disney, had requested that Verizon no longer assign Iverson to their

accounts.[20]  The 2005 Performance Assessment gave Iverson a rating of

"Corrective Action Required" and stated that other customers had informed

Verizon that Iverson had not arrived at their sites when scheduled.[21]  In addition to

customer complaints, the Assessment noted that Iverson had exceeded the

---

[17]     *See* 11/14/05 E-mail from Dwight Edwards, employee of ABN
AMRO, to Doug Welch, a Verizon supervisor ("11/14/05 E-mail"), Ex. B to
Taylor Decl.

[18]     11/14/05 E-mail.

[19]     *See* 12/10/05 E-mail From Teddy Jones, contractor for Disney through
ACS, to Deron Taylor, Ex. C to Taylor Decl.

[20]     *See* 2005 Performance Assessment.

[21]     *See id*.

threshold for sick days that was outlined in his PIP.[22]

### 3.   The 2006 Complaints and Iverson's Termination

On March 22, 2006, Taylor received a phone call from Melissa

Martinez at HSBC, a Verizon account to which Iverson was assigned.[23]  In this

phone call, Martinez complained that Iverson responded to a request to repair a

loose wire by saying, "I don't give a shit."[24]  On that same day, Taylor received a

voicemail from Martinez, who complained that Iverson had been found sleeping at

his desk.[25]  Taylor met with Iverson the next day and informed him that he was

---

[22]     *Id.*

[23]     *See* Verizon 56.1 ¶ 22; Declaration of Cliff Mosco ("Mosco Decl.") ¶
8; Taylor Decl. ¶ 11.

[24]     3/22/06 E-Mail from Deron Taylor to Peter Magee ("3/22/06 E-
Mail"), Ex. E to Taylor Decl.  Iverson contests that this event ever occurred. *See*
8/7/09 Letter from Dwayne Iverson to Court, Reply to Deron Taylor's Documents
E and F.

[25]     *See* 3/22/06 Transcript of Voicemail from Melissa Martinez
("Martinez Voicemail"), Ex. F to Taylor Decl.  There seems to be some confusion
about the date when Iverson fell asleep at work.  While the Martinez Voicemail
transcript is dated March 22, Verizon itself notes the date of the sleeping incident
as March 23. *See* Verizon 56.1 ¶ 27.  Iverson claims that he fell asleep on the job
on March 23, not March 22. *See* 7/10/09 Letter at 1.  In the transcript of Iverson's
Unemployment Insurance Appeal, however, Iverson states that the date when he
fell asleep on the job was March 22. *See* Unemployment Insurance Appeal
Transcript ("Appeal Transcript"), Ex. to 7/10/09 Letter, at 14; *see also* Iverson
Dep. at 141.  As there is no material difference between these two dates for the
purpose of this case, I use March 22.

suspended with pay due to a customer complaint.[26]

On March 31, 2006, Iverson contacted Cliff Mosco, a Human Resources employee for Verizon.[27] During this conversation, Iverson informed Mosco that he had a doctor's note stating: "Mr. Iverson suffers from diabetes that is not always well controlled. At times, his symptoms ma[y] include excessive drowsiness, unless his medications are taken on a timely basis."[28] Iverson explained to Mosco that he fell asleep at work as a result of forgetting to take his diabetes medication on March 22, 2006.[29]

Verizon kept Iverson on paid suspension until April 10, 2006, at which time Iverson received a letter informing him of the termination of his employment, effective April 11, 2006.[30] The letter stated that Iverson was terminated for "performance that does not meet position requirements" and because he "did not meet the requirements established in [his] Performance

---

[26]    *See* Verizon 56.1 ¶ 29; Appeal Transcript at 15.

[27]    *See* Verizon 56.1 ¶ 38; Appeal Transcript at 19.

[28]    7/10/09 Letter at 1; *see also* Verizon 56.1 ¶ 38.

[29]    *See* 7/10/09 Letter at 1.

[30]    *See id.*; 4/10/09 from Deron Taylor to Dwayne Iverson ("Termination Notice"), Ex. A to Mosco Decl.

Improvement Plan."[31]

## B.    Procedural History

On June 30, 2006, Iverson's union, the Communication Workers of

America, filed an unfair labor practice charge on his behalf with the National

Labor Relations Board ("NLRB"), alleging that Verizon discharged Iverson

because of his union affiliation.[32]    At the conclusion of its investigation, the NLRB

found Verizon's decision to terminate Iverson was "based upon considerations

related to his work performance" and not influenced by his union affiliation.[33]

Iverson also filed a complaint with the U.S. Equal Employment

Opportunity Commission ("EEOC").[34]    The EEOC issued a Determination on May

23, 2008.[35]    The EEOC found "reasonable cause to believe that [Verizon] had

failed to reasonably accommodate [Iverson] and then disparately treated him on

account of his disability" in violation of the Americans with Disability Act

---

[31]    Termination Notice.

[32]    *See* Verizon 56.1 ¶ 46; Iverson Dep. at 48.

[33]    10/31/06 Letter from Celeste J. Mattina, Regional Director of the
NLRB, to Jimmy Trainor, Secretary of the Communication Workers of America,
Local 1101, Ex. G to Aron Decl.

[34]    *See* 5/23/08 EEOC Determination Letter, Ex. to 7/10/09 Letter.

[35]    *See id*.

8

("ADA").[36]

Iverson filed a complaint in federal court on October 16, 2008,

alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§

12112-12117.[37] Iverson filed an Amended Complaint on April 6, 2009, adding

claims under the New York State Human Rights Law ("NYSHRL") and the New

York City Human Rights Law ("NYCHRL").[38] Verizon now moves for summary

judgment on all claims.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

---

[36]     *See id.*  Neither the EEOC Determination nor Iverson explain what
evidence was reviewed in arriving at this decision.  Due to this lack of information,
and the fact that the EEOC determination contradicts the conclusion reached by the
NLRB, I accord the determination no weight.  *See, e.g., Woodell v. United Way of
Dutchess County*, 357 F. Supp. 2d 761, 772 n.15 (S.D.N.Y. 2005) (according
EEOC Determination no weight "because it was sparse and conclusory and
provides no indication of what the EEOC's investigation actually involved"
(quotation marks and citations omitted)); *Wanamaker v. Columbian Rope Co.*, 907
F. Supp. 522, 538 n.24 (N.D.N.Y. 1995) (giving no weight to EEOC
Determination because there was no legal basis for its finding).

[37]     *See* Complaint.

[38]     *See* N.Y. Exec. Law §§ 290-297; N.Y. City Admin. Code §§ 8-101 to
131.

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."[39] "'An issue of fact is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. A fact is material if it might affect the outcome of the suit under the

governing law.'"[40] "[T]he burden of demonstrating that no material fact exists lies

with the moving party . . . ."[41]

       In turn, to defeat a motion for summary judgment, the non-moving

party must raise a genuine issue of material fact. "When the burden of proof at

trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to

point to a lack of evidence to go to the trier of fact on an essential element of the

nonmovant's claim."[42] To do so, the non-moving party must do more than show

---

[39]    Fed. R. Civ. P. 56(c).

[40]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.
2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[41]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)
(citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).
*Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d
Cir. 2004).

[42]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).
*Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4
(S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof
at trial, the burden on the moving party may be discharged by showing – that is,
pointing out to the district court – that there is an absence of evidence to support
the nonmoving party's case.") (quotation marks omitted).

that there is "'some metaphysical doubt as to the material facts,'"[43] and it "'may

not rely on conclusory allegations or unsubstantiated speculation.'"[44]  However,

"'all that is required [from a non-moving party] is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to

resolve the parties' differing versions of the truth at trial.'"[45]

In determining whether a genuine issue of material fact exists, the

court must "constru[e] the evidence in the light most favorable to the non-moving

party and draw all reasonable inferences" in that party's favor.[46]  However, "[i]t is

a settled rule that '[c]redibility assessments, choices between conflicting versions

of the events, and the weighing of evidence are matters for the jury, not for the

court on a motion for summary judgment.'"[47]  Summary judgment is therefore

"appropriate only if there is no genuine issue of material fact and the moving party

---

[43]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting
*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[44]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)
(quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[45]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206
(2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
(1986)).

[46]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*,
477 U.S. at 247-50, 255).

[47]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl
v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

is entitled to judgment as a matter of law."[48]

## B.   The Americans with Disabilities Act

The ADA prohibits an employer from discriminating against an

employee "on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees . . . ."[49]  An employment

discrimination claim under the ADA is subject to the familiar three-step burden-

shifting process established in *McDonnell Douglas Corp. v. Green*.[50]  "Despite the

initial evidentiary burden shifting, 'the ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff remains at

all times with the plaintiff.'"[51]

*First*, to establish a prima facie case of discrimination under the ADA,

a plaintiff must show that: "(1) the defendant is covered by the ADA; (2) plaintiff

suffers from or is regarded as suffering from a disability withing the meaning of

the ADA; (3) plaintiff was qualified to perform the essential functions of his job,

---

[48]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[49]    42 U.S.C. § 12112(a) (2009).

[50]    411 U.S. 792 (1973).

[51]    *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 307 (S.D.N.Y. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). *Accord Pacenza v. IBM Corp.*, No. 04 Civ. 5831, 2009 WL 890060, at *9 (S.D.N.Y. April 2, 2009) (same).

with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability."[52]

*Second*, once the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the termination."[53]  The "factual validity of the underlying imputation against the employee is not at issue" – rather, what is important is "'what motivated the employer.'"[54]

*Third*, if the defendant is able to produce admissible evidence showing a legitimate reason for terminating the employee, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[55]  To demonstrate pretext, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the

---

[52]    *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). *Accord Gaffney v. Department of Info. Tech. and Telecomm.*, 536 F. Supp. 2d 445, 472 (S.D.N.Y. 2008) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998)).

[53]    *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).

[54]    *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

[55]    *Id.*

employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors."[56]  Summary judgment is appropriate where "the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext."[57]

### C.    Local Law Claims

Discrimination claims brought under the NYSHRL and the NYCHRL are analyzed under the same three-step burden-shifting analysis as the ADA.[58]

## IV.    DISCUSSION

### A.    ADA Claims

Verizon has met its evidentiary burden by providing multiple legitimate business reasons for its decision to terminate Iverson, including multiple customer complaints and negative performance reviews.  As a result, Iverson must both establish a prima facie case of discrimination and show that Verizon's proffered reasons for his termination were merely a pretext for discrimination. Because Iverson will be unable to show that Verizon's proffered reasons were

---

[56]    *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

[57]    *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir 2004).

[58]    *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).

14

merely a pretext for discrimination, it is unnecessary to decide whether Iverson

would otherwise be able to establish a prima facie case of discrimination.

### 1. Verizon Has Provided Legitimate Reasons for Iverson's Termination

Verizon has provided sufficient evidence to demonstrate a long

history of problems with Iverson's work performance. This record of

documentation goes back to 2003, when Verizon gave Iverson a Year-End

Performance Review that clearly indicated that Iverson's performance was in need

of improvement, and that Verizon had recieved several customer complaints

regarding Iverson.[59] Iverson himself concedes his involvement in at least one of

these complaints, and acknowledges receiving a written warning notifying him that

he might be terminated if his performance did not improve.[60] In 2005, Verizon

placed Iverson on a PIP after noting a number of Verizon clients that no longer

wished to utilize Iverson's services.[61] The PIP again notified Iverson that

termination was possible should his performance fail to improve.[62] Iverson's 2005

---

[59] *See* 2003 Performance Assessment.

[60] *See* 12/16/03 Warning; Iverson Dep. at 103-105.

[61] *See* Iverson PIP.

[62] *See id.*

Performance Assessment also documented customer complaints about Iverson.[63]

These complaints continued until Iverson's suspension in 2006.[64]

Verizon's documentation of Iverson's poor performance and customer

complaints dating back to at least 2003 provides a legitimate reason for his

termination.[65] Because Verizon has provided a legitimate reason for Iverson's

termination, "the burden shifts back to [Iverson] to demonstrate by competent

evidence that the legitimate reasons offered by the defendant were not its true

---

[63]    *See* 2005 Performance Assessment.

[64]    *See* 3/22/06 E-Mail; Martinez Voicemail.

[65]    *See, e.g, Fall v. New York State United Teachers*, 289 Fed. Appx. 419,
421 (2d Cir. 2008) (finding poor performance to be a legitimate reason for adverse
employment action); *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 52
(S.D.N.Y. 2009) (finding record of poor performance and seven customer
complaints to be a legitimate, non-discriminatory basis for plaintiff's termination);
*Bronzini v. Classic Sec. LLC*, No. 07 Civ. 11104, 2009 WL 102140, at *5
(S.D.N.Y. Jan. 15, 2009) (finding clear record of client dissatisfaction with
employee to be legitimate reason for adverse employment action); *Ifill v. United
Parcel Serv.*, No. 04 Civ. 5963, 2008 WL 2796599, at *7 (S.D.N.Y. July 17, 2008)
(finding record of customer complaints of which employee was notified to serve as
a legitimate basis for adverse employment action); *Charneco v. Department of
Educ.*, No. 04 Civ. 1848, 2006 WL 148934, at *6 (S.D.N.Y Jan. 18, 2006) (finding
well-documented concerns about plaintiff's performance to be a legitimate reason
for termination); *Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896, 906
(E.D.N.Y. 1999) ("Continental has advanced a credible reason for its
dissatisfaction with and eventual discharge of Brower. Specifically, it points to the
numerous customer complaints regarding Brower.").

reasons, but were a pretext for discrimination."[66]

## 2.     Iverson Cannot Demonstrate that Verizon's Reasons Were a Pretext for Discrimination

Iverson has provided no evidence to show that Verizon's reasons for termination, specifically Iverson's record of poor performance and customer complaints, were merely a pretext for discrimination. Iverson claims that he repeatedly contested Verizon's allegations of customer dissatisfaction and poor performance.[67] Merely disagreeing with a supervisor's assessment of work performance, however, "is insufficient to raise a triable issue of fact regarding pretext."[68]

Iverson attempts to rebut Verizon's claims of poor performance and customer complaints by providing "letters and notes of commendation."[69] Some of these letters only indirectly refer to Iverson, while others are vague or undated.[70]

---

[66]     *Patterson*, 375 F.3d at 221 (quotation marks and citations omitted).

[67]     *See* 7/10/09 Letter at 1.

[68]     *Milano v. Astruel*, No. 05 Civ. 6527, 2008 WL 4410131, at * 41 (S.D.N.Y. Sept. 26, 2008). *Accord Griffin,* 103 F. Supp. 2d at 309 (stating that an employee's disagreement with employer's assessment of her performance is not sufficient, by itself, to show that employer's proffered reason for an adverse action was pretextual); *Ricks v. Conde Nast Publ'ns*, 92 F. Supp. 2d 388, 347 (S.D.N.Y. 2000).

[69]     *See* 7/10/09 Letter at 2.

[70]     *See* Letters of Commendation, Ex. to 7/10/09 Letter.

Of the letters that are dated, two are from March 2004, and the remaining three are from March and April of 2005.[71] This demonstration of praise during two brief periods of time does not contradict Verizon's substantial documentation of poor performance and customer complaints starting in 2003 and continuing until Iverson's termination in 2006. Demonstration of past positive performance is "insufficient to raise a genuine issue of disputed fact with respect to pretext."[72]

Iverson also claims that his termination must have been motivated by discrimination because it occurred near the time Verizon learned of his disability. Merely claiming temporal proximity between the disclosure of disability and termination, however, is not enough to show that Verizon's reasons for termination were a pretext for discrimination.[73]

Iverson's own conclusory statements are the only other evidence he provides to show that Verizon's proffered reasons were merely a pretext for

---

[71]     *See id.*

[72]     *Milano*, 2008 WL 4410131, at *41. *Accord Pergament v. Federal Exp. Corp.*, No. 03 Civ. 01106, 2007 WL 1016993, at *12 (E.D.N.Y. Mar. 30, 2007) (stating that employee's receipt of generally positive evaluations in the past did not raise a triable issue of fact regarding pretext).

[73]     *See Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) ("In light of the well-documented evidence of [defendant]'s dissatisfaction with [plaintiff]'s performance long before her announcement that she was pregnant, a trier of fact could not reasonably find from the timing and sequence of events that the reason for [plaintiff]'s dismissal was pretextual.")

discrimination. As a matter of law, such statements are insufficient to establish pretext.[74] As Iverson has failed to raise a genuine issue of material fact regarding pretext, his ADA claim must be dismissed.

### B.     Local Law Claims

Iverson also makes claims of disability discrimination under the NYSHRL and the NYCHRL. These claims are analyzed under the same three-step analysis as the ADA claim.[75] As discussed above, Iverson has failed to raise a triable issue of material fact regarding pretext. Iverson's NYSHRL and NYCHRL claims must therefore also be dismissed.

## V.     CONCLUSION

For the reasons stated above, Verizon's motion for summary judgment is granted. The Clerk of the Court is directed to close this motion [Docket No. 18] and this case.

---

[74]     *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (noting that a plaintiff may not establish an inference of discrimination by offering "purely conclusory allegations of discrimination, absent any concrete particulars"); *Rollins v. New York City Dept. of Educ.*, Nos. 05 Civ. 10482, 06 Civ. 3657, 2008 WL 2736018, at *5 (S.D.N.Y. July 8, 2008) ("Plaintiff has presented no evidence of pretext except for her own beliefs that defendants were motivated by discrimination. This fails to establish pretext as a matter of law."); *Milano*, 2008 WL 4410131, at *42 ("Plaintiff's assertions as to his supervisors'motives are conclusory and speculative, and, as such, they do not raise triable issues.").

[75]     *See Weinstock*, 224 F.3d at 42 n.1.

19

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 13, 2009

## - Appearances -

**Plaintiff (Pro Se):**

Dwayne Iverson
2430 Bronxwood Avenue, Apartment 3C
Bronx, New York 10469-4538
(917) 864-1011

**For Defendant:**

Martin W. Aron, Esq.
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, New York 10022
(212) 308-4411